William P. Deni, Jr.
J. Brugh Lower
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500

*Attorneys for Plaintiffs
Bausch & Lomb Americas Inc.,
Bausch + Lomb Ireland Ltd.,
OmniActive Health Technologies Limited,
and OmniActive Health Technologies Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BAUSCH & LOMB AMERICAS INC.; BAUSCH + LOMB IRELAND LTD.; OMNIACTIVE HEALTH TECHNOLOGIES LIMITED; and OMNIACTIVE HEALTH TECHNOLOGIES INC., <br><br> Plaintiffs, <br><br> v. <br><br> PRN PHYSICIAN RECOMMENDED NUTRICEUTICALS, LLC and LIPOTRIAD, LLC, <br><br> Defendants. | Civil Action No. 24-9255 <br><br> *Document Electronically Filed* |

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Bausch & Lomb Americas Inc., Bausch + Lomb Ireland Ltd. (together "Bausch + Lomb"), OmniActive Health Technologies Limited, and OmniActive Health Technologies Inc., (together "OmniActive") (collectively "Plaintiffs") bring this civil action against Defendants PRN Physician Recommended Nutriceuticals, LLC ("PRN") and Lipotriad, LLC ("Lipotriad") (together "Defendants") for damages, injunctive relief, and all other just remedies arising out of

1

Defendants' willful infringement of Plaintiffs' federally registered NUTRITEARS® trademarks and related unfair competition and state law claims.

## PARTIES

1. Plaintiff Bausch & Lomb Americas Inc. is a Delaware corporation with a principal place of business at 400 Somerset Corporate Blvd., Bridgewater, New Jersey 08807.

2. Plaintiff Bausch + Lomb Ireland Ltd. is an Irish corporation with a principal place of business at 3013 Lake Drive, Citywest Business Campus, Citywest, Dublin D24 PPT3, Ireland.

3. Plaintiff OmniActive Health Technologies Limited is an Indian corporation with a principal place of business located at Phoenix House, T- 8b, A Wing, 462 Senapati Bapat Marg, Lower Parel, Mumbai – 400 013.

4. Plaintiff OmniActive Health Technologies Inc. is a Delaware corporation with a principal place of business at 685 Route 202/206 South, Suite 302, Bridgewater, New Jersey 08807.

5. On information and belief, Defendant PRN Physician Recommended Nutriceuticals, LLC, is a Delaware limited liability company associated with the following addresses: 960 Harvest Drive, Building B, Suite B205, Blue Bell, Pennsylvania 19422; 5 Sentry Parkway, East Bldg., Suite 210, Blue Bell, Pennsylvania 19422; and 502 West Germantown Pike, Suite 610 Plymouth Meeting, Pennsylvania 19462.

6. On information and belief, Defendant Lipotriad, LLC is an affiliate, or fictitious name, of Defendant PRN associated with the following addresses: 960 Harvest Drive, Building B, Suite B205, Blue Bell, Pennsylvania 19422; 5 Sentry Parkway, East Bldg., Suite 210, Blue Bell, Pennsylvania 19422; and 502 West Germantown Pike, Suite 610 Plymouth Meeting, Pennsylvania 19462.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the federal trademark infringement and unfair competition claims asserted in this action pursuant to 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. § 1121.

8.  Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the claims in this Complaint that arise under the statutory and common law of New Jersey because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

9.  This Court properly exercises personal jurisdiction over Defendants pursuant to New Jersey Court Rule 4:4-4 because Defendants have purposefully directed their actions and business to New Jersey and this judicial district or have otherwise availed themselves of the privileges and protections of the laws of the state of New Jersey, such that this Court's assertion of jurisdiction over each Defendant does not offend traditional notions of fair play and due process.

10. Jurisdiction over Defendants is proper because Defendants have offered the Infringing Products (as defined herein) to New Jersey consumers online through various websites, including but not limited to storefronts on www.lipotriadvitamins.com, and other e-commerce websites, which, upon information and belief, Defendants control. Defendants have further advertised that their Infringing Products are also available in independent drugstores throughout the USA and through eye care physicians nationwide, which includes drugstores and physicians in the state of New Jersey.

11. Defendant PRN is registered to do business in the state of New Jersey demonstrating that it has purposefully directed its business activities, including the sale of its Infringing Products to the state of New Jersey.

12. Defendants have distributed and/or sold the Infringing Products to New Jersey consumers purposefully and knowingly through their website www.lipotriadvitamins.com, and other e-commerce websites.

13. Venue is proper in this judicial district pursuant to, *inter alia*, 28 U.S.C. §§ 1391(b) and 1391(c), because a substantial part of the events or omissions giving rise to the claims set forth in this Complaint occurred in this District, including Defendants' infringing activities and the resulting harm to Plaintiffs.

## FACTS COMMON TO ALL CLAIMS

### Plaintiffs' Businesses and the NutriTears® Products

14. Bausch + Lomb is a renowned eye health products company, known for high quality eye-related pharmaceuticals, supplements, contact lenses, and eye surgery products.

15. For nearly two centuries, Bausch + Lomb has been at the forefront of optical innovation. From Bausch + Lomb's founders selling eyeglass frames in 1853, Bausch + Lomb has grown to offer consumers a comprehensive portfolio of product offerings, including but not limited to products designed to ease dry eye symptoms.

16. As a result of almost two centuries of reliability and innovation, Bausch + Lomb has become an industry leader and enjoys a hard-earned reputation for distributing effective eye care and eye health products sold both over the counter, and in pharmacies.

17. Continuing its history of offering consumers innovative products, Bausch + Lomb launched a dietary supplement with a proprietary formula bearing the NutriTears® trademark called **Blink™ NutriTears® Supplement for Dry Eyes** (the "NutriTears® Products").

18. The NutriTears® Products are sold in the form of soft gel capsules that are used to relieve symptoms of dry eyes and promote overall eye health.

19. The NutriTears® Products are sold over the counter in drug stores and pharmacies, as well as through online retailers including, but not limited to, Amazon.com.

20. OmniActive is a health and wellness company that has offered the highest quality active ingredients and supplements since 2005. OmniActive works with supplement companies to create co-branded products that use OmniActive's branded supplements and carry its trademark(s) on the product packaging.

21. OmniActive's products meet high industry standards through research and development, stringent quality control, and eco-friendly manufacturing processes. Accordingly, OmniActive has established and maintains a reputation in the industry and among consumers for the quality and consistency of its products.

22.     Together, Plaintiffs have combined efforts to launch a new highly effective dietary supplement product displaying the NUTRITEARS® brand that builds on the longstanding reputation of both Plaintiffs for manufacturing and distributing high quality eye care products.

### The NUTRITEARS® Trademarks

23.     Plaintiff OmniActive Health Technologies Limited is the owner of all rights in and to the following NUTRITEARS® trademarks, each of which is registered on the Principal Register of the United States Patent and Trademark Office ("USPTO"):

| Trademark | Registration Number | Goods and Services | Registration Date | Application Date |
|---|---|---|---|---|
| Nutritears (logo) | 6914133 | Class 5: Nutritional supplements, namely, for eye health, comfort and hydration | November 29, 2022 | April 29, 2021 |
| NUTRITEARS (word mark) | 7197515 | Class 5: Nutritional supplements, namely, for eye health, comfort and hydration | October 17, 2023 | March 18, 2022 |

True and accurate copies of the USPTO registration certificates for the NUTRITEARS® Trademarks are attached as **Exhibit 1** (collectively, the "NUTRITEARS® Trademarks").

24.     Bausch + Lomb has a license to use the NUTRITEARS® Trademarks in connection with the production and sale of the NutriTears® Products.

25.     The NUTRITEARS® Trademarks are inherently distinctive when applied to "Nutritional supplements, namely, for eye health, comfort and hydration."

26.     Plaintiffs have continuously used the NUTRITEARS® Trademarks in the United States alone and in combination with NutriTears® Products.

27.     Examples of the NUTRITEARS® Trademarks featured on and in connection with the sale of authentic NutriTears® Products are depicted below.

 

28. Plaintiffs promote and sell the NutriTears® Products on the internet, via a Bausch + Lomb-branded website (https://www.justblink.com/products/blink-nutritears/) and through other digital channels. OmniActive has promoted and sold the NutriTears® product, through its own website, trade shows, as well as through shipping free samples to customers for evaluation of formulation for various commercialization projects.

29. Plaintiffs have invested substantial amounts in advertising and marketing to build the fame, reputation, and goodwill of the NUTRITEARS® Trademarks.

### **Defendants' Business and Willful Infringing Activities**

30. Defendants are businesses involved in the sale of dietary supplements and vitamins for the purpose of "healthy eyes".

31. Defendants offer dietary supplements for sale in the form of soft gel capsules related to eye health featuring the confusingly similar infringing mark "NUTRITEAR" placed prominently on the front of the packaging (the "Infringing Products"), as shown below.



32. These Infringing Products bearing near identical versions of the NUTRITEARS® Trademarks are sold on the Lipotriad website, https://lipotriadvitamins.com/, and through other e-commerce retailers such as Amazon.

33. On May 14, 2021, Lipotriad (through PRN Physician Recommended Nutraceuticals, LLC, its parent company) filed a trademark application for a NUTRITEAR mark.

34. On information and belief, Defendants' Infringing Products used to be branded without any use of "NutriTear," and were labeled solely as "Lipotriad Dry Eye," through at least April 2021.

35. On information and belief, Defendants began offering dry eye supplements for sale under the NUTRITEAR mark in or around September of 2021.

36. On January 25, 2022, Lipotriad's trademark application for NUTRITEAR received an office action refusing registration, among other grounds, based on a likelihood of confusion with OmniActive's prior-pending NUTRITEARS® Trademarks.

37. Thereafter, Lipotriad did not respond to the refusal from the USPTO for the "NUTRITEAR" trademark and instead expressly abandoned its trademark application on May 25, 2022. A true and accurate copy of the USPTO trademark records demonstrating that Lipotriad abandoned its application for the "NUTRITEAR" trademark without appeal is attached as **Exhibit 2**.

38. Lipotriad never made arguments to the USPTO that its applied-for mark "NUTRITEAR" was not likely to be confused with Plaintiffs' NUTRITEARS® Trademarks, and despite the refusal from the USPTO on the basis of, *inter alia,* the likelihood of confusion with Plaintiffs' NUTRITEARS® Trademark for dry eye dietary supplements, Lipotriad has continued to sell dietary supplements for dry eyes under the infringing NUTRITEAR mark.

39. Accordingly, Lipotriad had actual knowledge of OmniActive's prior rights in the eye health supplement field at least as early as January 25, 2022, but chose to continue using its infringing NUTRITEAR mark anyway. Lipotriad's first use of the NUTRITEAR mark, on information and belief in September 2021, was after OmniActive's priority date of April 29, 2021.

40. In or around late 2023, Plaintiffs learned that Lipotriad was offering eye health supplements under the infringing NUTRITEAR mark.

41. Defendants' infringing NUTRITEAR mark is identical to Plaintiffs' NUTRITEARS® Trademark in sight, sound, and presentation, with the subtraction only of an 's'.

42. Defendants' infringing NUTRITEAR mark is used in connection with identical or highly related dietary supplement products as those offered for sale by Bausch + Lomb in connection with Plaintiffs' NUTRITEARS® Trademarks.

43. Moreover, Defendants' Infringing Products are being offered to identical and common interested customers, at a highly similar price point, and through identical channels of trade as Plaintiffs' NutriTears® Products.

44. On October 9, 2023, counsel for OmniActive issued a cease-and-desist letter to Lipotriad, specifically demanding that Lipotriad cease using the infringing NUTRITEAR mark.

45. However, to date, Lipotriad has refused to cease its sale of the Infringing Products and other infringing activities.

46. Defendants' use of a NUTRITEAR mark that is virtually identical to the NUTRITEARS® Trademarks will mislead consumers into believing that Defendants or the infringing NUTRITEAR mark are somehow affiliated with Plaintiffs or their products, when they are not.

47. Defendants' use of a NUTRITEAR mark that is virtually identical to the NUTRITEARS® Trademarks on identical products will falsely convey that Defendants are approved, sponsored, or supplied by Plaintiffs, when they are not.

48. Defendants had at least constructive knowledge of Plaintiffs' rights, due to the pending NUTRITEARS® trademark application and actual knowledge of Plaintiffs' rights at least as early as the Office Action against Defendants' NUTRITEAR trademark application.

49. As such, Defendants' continuing infringement of the NUTRITEARS® Trademarks is intentional and is with full knowledge of Plaintiffs' rights and as such is willful.

50. Defendants' infringement of the NUTRITEARS® Trademarks provides an unlawful competitive advantage to Defendants at Plaintiffs' expense, diverting sales from Plaintiffs and causing damage to Plaintiffs' reputation and goodwill.

51. Defendants have continued to engage in such illegal and infringing actions as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiffs' rights, or in bad faith, for the purpose of trading on the goodwill and reputations of Plaintiffs, including, without limitation, Plaintiffs' NUTRITEARS® Trademarks.

52. Defendants have, among other things, willfully and in bad faith committed the following, all of which have caused and will continue to cause irreparable harm to Plaintiffs: engaged in trademark infringement; engaged in unfair competition; and unfairly profited from such activities at Plaintiffs' expense. Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiffs.

### Irreparable Harm to Plaintiffs

53. Defendants' use of a confusingly similar version of the NUTRITEARS® Trademarks on a virtually identical dry eye supplement deprives Plaintiffs of their absolute right to control the quality and safety of products sold under the NUTRITEARS® Trademarks. This is especially concerning given the nature of these goods as ingestible health supplements, and the potential risk of harm to patients who seek out the NutriTears® Products due to the hard-earned reputation of Plaintiffs, and are confused by Defendants' Infringing Products.

54. Plaintiffs take consumer safety extremely seriously, which is why authentic NutriTears® Products have been through appropriate testing and quality control.

55. Plaintiffs cannot guarantee that Defendants' Infringing Products using the confusingly similar version of the NUTRITEARS® Trademarks have been through the same quality control testing and approval process and thus cannot guarantee the safety of these products.

56. Moreover, consumers deceived and potentially even harmed by Defendants' Infringing Products are likely to think less favorably of Plaintiffs than they would if they had experienced authentic NutriTears® Products, as they intended.

57. There is a likelihood of confusion between Plaintiffs' authentic NutriTears® Products and Defendants' Infringing Products branded with the infringing NUTRITEAR mark.

58. When a search for "NutriTears" is conducted on the e-commerce platform Amazon.com, the results page displays the Infringing Products right alongside authentic NutriTears® Products. In fact, the results page on Amazon.com confusingly displays the Infringing Products as the very first result when users search for NutriTears® Products. A screenshot of the landing page for the "NutriTears" search on Amazon.com is attached as **Exhibit 3**.

59. As a direct and proximate result of the foregoing, Plaintiffs have suffered, and unless Defendants' conduct is enjoined by this Court, will continue to suffer, actual damages in the form of lost sales, revenues, and profits, and irreparable harm to the NUTRITEARS® brand value, reputation, and goodwill, for which Plaintiffs have no adequate remedy at law.

**COUNT I**
**FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)**
**(On behalf of Plaintiff OmniActive Health Technologies Limited)**

60. Plaintiffs restate and re-allege each of the foregoing paragraphs as if fully set forth herein.

61. Defendants have used in commerce, without Plaintiffs' consent, a confusingly similar version or colorable imitation of one or more of the registered NUTRITEARS®

Trademarks on and in connection with the sale, offering for sale, distribution, or advertising of their own product, namely, a dietary supplement for dry eyes, which is likely to cause confusion, mistake, or deceive consumers.

62. Defendants' actions constitute willful infringement of Plaintiffs' exclusive rights in and to the NUTRITEARS® Trademarks, which are registered on the U.S. Principal Register, and which Plaintiff OmniActive Health Technologies Limited owns and has the exclusive right to use, license, and enforce in the United States.

63. As a direct and proximate result of Defendants' willful misconduct, Plaintiff OmniActive Health Technologies Limited has suffered economic damages and irreparable harm to the value and goodwill associated with the registered NUTRITEARS® Trademarks, and there has been irreparable harm to Plaintiffs' reputation in the health and nutritional supplements industries.

64. Unless Defendants are restrained and enjoined from buying, selling, or otherwise distributing the Infringing Products, or otherwise using or infringing the NUTRITEARS® Trademarks, OmniActive Health Technologies Limited will continue to be economically damaged and irreparably harmed.

65. Defendants have earned illicit profits, and OmniActive Health Technologies Limited has suffered lost profits from lost sales, in amounts not yet known but to be determined at trial.

66. OmniActive Health Technologies Limited has no remedy at law that could compensate it for the continued, irreparable harm caused by Defendants' purchase, sale, and other distribution of the Infringing Products and infringement of the NUTRITEARS® Trademarks. Accordingly, OmniActive Health Technologies Limited is entitled to preliminary and permanent injunctive relief.

67. Plaintiffs are also entitled to enhanced damages, and/or reasonable attorneys' fees, in amounts not yet known, but to be determined at trial.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))
## (On behalf of all Plaintiffs)

68. Plaintiffs restate and re-allege each of the foregoing paragraphs as if fully set forth herein.

69. Defendants have in connection with their purchase, sale, and other distribution of the Infringing Products, used in commerce a slogan, word, term, name, symbol, or device, or a combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which was and is likely to cause confusion or to cause mistake, or to deceive consumers as to an affiliation, connection, or association with Plaintiffs and the NutriTears® Products.

70. Defendants willfully sold their own version of a dietary supplement for dry eyes bearing infringing versions of the NUTRITEARS® Trademarks, and thereby infringed Plaintiffs' nationwide common-law rights therein.

71. As a direct and proximate result of Defendants' willful misconduct, Plaintiffs have suffered, and are suffering, economic damages and irreparable harm to the value and goodwill associated with their common-law trademarks, including the NUTRITEARS® Trademarks, and associated reputations, brand value, and goodwill.

72. Unless Defendants are restrained and enjoined from further infringement of the NUTRITEARS® Trademarks, Plaintiffs will continue to be economically damaged and irreparably harmed.

73. Plaintiffs have no adequate remedy at law that could compensate them for the continued and irreparable harm they have suffered, and will continue to suffer, if Defendants' manufacture, promotion, sale, and other distribution of the Infringing Products is allowed to continue. Thus, Plaintiffs are entitled to preliminary and permanent injunctive relief.

74. Defendants have earned illicit profits, and Plaintiffs have suffered lost profits from lost sales, in amounts not yet known but to be determined at trial.

75. Plaintiffs are entitled to damages, trebled damages, and/or reasonable attorneys' fees, in amounts not yet known, but to be determined at trial.

### COUNT III
### UNFAIR COMPETITION – NEW JERSEY COMMON LAW
### (On behalf of all Plaintiffs)

76. Plaintiffs restate and re-allege each of the foregoing paragraphs as if fully set forth herein.

77. In violation of the common law of the State of New Jersey and elsewhere, Defendants have unfairly competed with Plaintiffs by manufacturing, selling, offering for sale, and/or distributing the Infringing Products and therefore appropriating a distinctive portion of the value of the NUTRITEARS® Trademarks.

78. Defendants' willful misconduct caused confusion and uncertainty in Plaintiffs' businesses by deceiving and misleading the public, who, with such reasonable care and observation as the public is generally capable of and may be expected to exercise, is likely to mistake Defendants' Infringing Products with those sold by Bausch + Lomb.

79. As a direct and proximate result of Defendants' willful misconduct, Plaintiffs have suffered, and are suffering, economic damages and irreparable harm to the value and goodwill associated with their common-law trademarks, including the NUTRITEARS® Trademarks, and associated reputations, brand values, and goodwill.

80. Unless Defendants are restrained and enjoined from further infringement of the NUTRITEARS® Trademarks, Plaintiffs will continue to be economically damaged and irreparably harmed.

81. Plaintiffs have no adequate remedy at law that could compensate them for the continued and irreparable harm they have suffered, and will continue to suffer, if Defendants' purchase, sale, and other distribution of the Infringing Products is allowed to continue.

82. As a direct and proximate result of Defendants' willful misconduct, Plaintiffs have suffered damages to the valuable NUTRITEARS® Trademarks and other damages.

**COUNT IV**
**NEW JERSEY STATE UNFAIR COMPETITION LAW (N.J. Rev. Stat. § 17:29B)**
**(On behalf of all Plaintiffs)**

83. Plaintiffs restate and re-allege each of the foregoing paragraphs as if fully set forth herein.

84. Defendants used in commerce, without Plaintiffs' consent, either a confusingly similar version or colorable imitation of the NUTRITEARS® Trademarks in connection with the sale, offering for sale, or advertising of the Infringing Products, which is likely to cause confusion, or to cause mistake, or to deceive.

85. Defendants used in commerce a slogan, trade dress, word, term, name, symbol, or device, or any combination thereof, or a false designation of origin, false or misleading representation of fact, which was or is likely to cause confusion or to cause mistake, or to deceive as to an affiliation, connection, or association with Plaintiffs and the NutriTears® Products.

86. Defendants' actions constitute unfair, unconscionable, or deceptive methods, acts, or practices in conduct of trade or commerce, and interfere with the exclusive rights in and to the NUTRITEARS® Trademarks.

87. Plaintiffs have suffered irreparable harm to the value and goodwill associated with the NUTRITEARS® Trademarks and their reputations in the industry.

88. Unless Defendants are restrained from further unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce that interferes with Plaintiffs' exclusive rights to the NUTRITEARS® Trademarks, Plaintiffs will continue to be irreparably harmed.

89. Plaintiffs have no adequate remedy at law that will compensate for the continued, irreparable harm that they will suffer if Defendants' willful misconduct is allowed to continue.

90. Plaintiffs have suffered damages to the valuable NUTRITEARS® Trademarks, and other damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

91. Judgment for Plaintiffs that:

　a. Defendants have violated Section 32 of the Lanham Act, 15 U.S.C. § 1114;

　b. Defendants have violated Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) (unfair competition, false designation of origin, common-law trademark infringement);

　c. Defendants have unfairly competed with Plaintiffs in violation of New Jersey state and common law; and

　d. Defendants acted in bad faith, willfully, intentionally, and/or in malicious disregard of Plaintiffs' lawfully protected rights.

92. A preliminary and permanent injunction enjoining Defendants, their agents, their servants, their employees, and their officers, and all those acting in concert or participation with them, who receive actual notice by personal service or otherwise, pending the final hearing and determination of this action, from directly or indirectly, anywhere in the world:

　a. Manufacturing, making, buying, purchasing, importing, shipping, delivering, advertising, marketing, promoting, offering to sell, selling, or otherwise distributing or disposing of, in any manner, the Infringing Products bearing any version or colorable imitation of the NUTRITEARS® Trademarks;

　b. Using in commerce a slogan, word, term, name, symbol, or device, or a combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which was and is likely to cause confusion or to cause mistake, or to deceive consumers as to an affiliation, connection, or association with Plaintiffs and the NutriTears® Products, when there is none;

　c. Committing acts calculated to cause purchasers to believe that the Infringing Products originate with Plaintiffs when they do not;

　d. In any way infringing or damaging the NUTRITEARS® Trademarks or the value or goodwill associated therewith;

  e. Attempting, causing, or assisting in any of the above-described acts, including but not limited to enabling others in the above-described acts, or passing on information to others to allow them to do so; and

  f. Forming or causing to be formed any corporation or other entity that engages in the above-described acts.

93. An order:

  a. Requiring Defendants to account for and pay over to Plaintiffs all profits derived from their wrongful misconduct to the full extent provided for by Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a);

  b. Requiring Defendants to pay enhanced damages for the intentional and wrongful misconduct to the full extent provided for by the Lanham Act;

  c. Awarding any and all other damages permitted by the Lanham Act, including compensation for damage to the value of the NUTRITEARS® Trademarks, their reputation among U.S. consumers, their goodwill, corrective advertising costs, and other damages in an amount not yet known, but to be proved at trial;

  d. Awarding any and all other damages permitted by New Jersey state and common law;

  e. Awarding Plaintiffs their costs of suit, including reasonable attorneys' fees and investigation costs; and

  f. Awarding such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs respectfully demand a trial by jury in this action under Rule 38 of the Federal Rules of Civil Procedure for all matters so triable.

| | |
|---|---|
| Dated: September 18, 2024<br>Newark, New Jersey | Respectfully submitted,<br><br>s/ William P. Deni, Jr.<br>William P. Deni, Jr.<br>J. Brugh Lower<br>**GIBBONS P.C.**<br>One Gateway Center<br>Newark, New Jersey 07102<br>(973) 596-4500<br>wdeni@gibbonslaw.com<br>jlower@gibbonslaw.com<br><br>Of Counsel:<br><br>Marcella Ballard (*pro hac vice* forthcoming)<br>Maria R. Sinatra<br>Amy N. Marcus (*pro hac vice* forthcoming)<br>**VENABLE LLP**<br>151 West 42nd Street, 49th Floor<br>New York, New York 10036<br>(212) 307-5500<br><br>*Attorneys for Plaintiffs*<br>*Bausch & Lomb Americas Inc.,*<br>*Bausch + Lomb Ireland Ltd.,*<br>*OmniActive Health Technologies Limited,*<br>*and OmniActive Health Technologies Inc.* |